UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

AL GAMMARINO, TRUSTEE, *et al.*,

    Plaintiffs,

    v.

SYCAMORE TOWNSHIP, *et al.*,

    Defendants.

Case No. 1:22-cv-200
JUDGE DOUGLAS R. COLE

## OPINION AND ORDER

Al, Cathy, and Anthony Gammarino own properties in Sycamore Township, Ohio. The Township determined that those properties had become nuisances. As a result, the Township's agents entered the Gammarinos' property and cleared out the offensive vehicles and building supplies.[1] The Gammarinos responded by suing the Township, its trustees, and its agents in Ohio state court for damages under federal and state law. (Doc. 2). Defendants have since removed the case (Doc. 1), answered (Doc. 3), and moved for judgment on the pleadings (Doc. 5). For the reasons discussed below, the Court **GRANTS** Defendants' Motion for Judgment on the Pleadings (Doc. 5) and **DISMISSES** the Gammarinos' Complaint (Doc. 2) **WITHOUT PREJUDICE**. The Court further **GRANTS** the Gammarinos thirty days to move for leave to file an

---

[1] The Gammarinos claim that this removal occurred without any notice to them or any opportunity to be heard. The documents Defendants attach to their Answer, though, tell a very different story. (Doc. 3). Given the basis on which the Court dismisses the action here, the Court need not decide whether to credit those documents. As discussed below, however, the Court encourages the Gammarinos (and their counsel) to consider the implications of those documents for any potential Amended Complaint they may offer.

Amended Complaint addressing the deficiencies the Court identifies below, if they can, and attaching that proposed Amended Complaint.

## BACKGROUND

This matter is before the Court on a motion for judgment on the pleadings. For such motions, the Court accepts the well-pled factual allegations in the Complaint as true. *See Bullington v. Bedford County*, 905 F.3d 467, 469 (6th Cir. 2018). So in reporting the background here, the Court largely relies on the allegations in the Complaint, but with the caveat that they are just that—allegations.

Al, Cathy, and Anthony Gammarino (collectively, the "Gammarinos") own and maintain real property in Sycamore Township, Ohio. (Doc. 2, #41, 43, 45). The Gammarinos stored vehicles and "building materials" at three properties. (*Id.*). For each, they allege the property "did not have delinquent taxes, assessments, interest, or penalties remaining unpaid for more than one year and … was not nonproductive land." (*Id.* at #41, 43, 46).

Defendant Sycamore Township's trustees and agents investigated and formally declared all three properties nuisances. (*Id.* at #41, 43, 45). The Gammarinos allege that, in doing so, the Township's trustees and agents did not follow state law and did not notify them of any violations beforehand. (*Id.* at #41–47). And because they claim they did not receive notice, the Gammarinos also allege they never received a hearing. (*Id.* at #43, 45, 47). Next, Township agents, without the Gammarinos' permission, entered the properties and removed the vehicles and building materials—also allegedly violating state law. (*Id.* at #42–49). The

Gammarinos further allege the Township's trustees and agents carried out these illegal acts maliciously, wantonly, recklessly, and/or intentionally. (*Id.* at #42, 44, 47, 50). To substantiate, the Gammarinos claim Defendant Kevin Clark told "a property owner across the street" that the Gammarinos were "causing trouble for Sycamore Township." (*Id.* at #49).

On March 17, 2022, Al (both individually and as a trustee), Cathy, and Anthony Gammarino sued the Township in state court. (Doc. 2). Along with Sycamore Township itself, the Gammarinos named the Township's trustees and agents in both their official and individual capacities: Tom James, Jim Labarbara, Tom Wiedman, Skylore Miller, Kevin Clark, Robert Porter, Ray Warrick, and John Doe Towing Companies and their John Doe operators. (*Id.* at #35–37). The Gammarinos' federal claims proceed under four statutes: 42 U.S.C § 1981, 42 U.S.C § 1983, 42 U.S.C § 1985, and 42 U.S.C § 1986. (*Id.* at #51–54). The Gammarinos also press four Ohio law claims: one count of common law trespass, two counts of conversion, and one count arising under Ohio Revised Code § 2307.60 for "theft." (*Id.* at #49–51, 54–57).

Defendants removed to this Court under 28 U.S.C. § 1331 (Doc. 1) and answered (Doc. 3). Attached to the Answer, Defendants provided over two dozen exhibits. These include multiple letters apparently sent by regular and certified mail to the Gammarinos informing them of the nuisance their properties created and the Township's intended actions in response. (*See, e.g.*, Docs. 3-1, 3-6, 3-16). Others appear to be pictures of notice letters physically posted on the Gammarinos' properties. (*See, e.g.*, Docs. 3-9, 3-11, 3-14).

On July 6, 2022, Defendants moved for judgment on the pleadings. (Doc. 5). They argued that the Gammarinos' § 1981, § 1985, and § 1986 claims failed out of the gate because the Complaint contained no allegations of race-based discrimination. (*Id.* at #173–74). Next, they pointed to the exhibits attached to the Answer as irrefutable evidence that the Gammarinos received adequate notice and process. (*Id.* at #175–76). Further, Defendants argued that the Gammarinos never said which constitutional rights they allegedly violated. (*Id.* at #174). Finally, they contended that all Defendants enjoyed state-law immunity for all state-law claims, including qualified immunity, legislative immunity, and political subdivision immunity. (*Id.*).

The Gammarinos responded. (Doc. 10). First, they argued that Al Gammarino immigrated from Italy in 1958, seemingly suggesting that the Township acted with racial animus on that basis. (*Id.* at #212–13). Next, the Gammarinos clarified—for the first time—that their § 1983 claim proceeded based on violations of the Fourth, Fifth, and Fourteenth Amendments. (*Id.* at #222). The Gammarinos further explained that the basis for their claims was "not only set forth clearly in the [C]omplaint, but also in the Constitution of the United States which dates to September 17, 1787 when the U.S. Constitution was signed." (*Id.* at #213–14). Finally, the Gammarinos argued that Defendants did not follow Ohio law in declaring their properties nuisances. (*Id.* at #217–23). Defendants replied. (Doc. 11). The matter is now ripe.

## STANDARD OF REVIEW

A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is analyzed like a motion to dismiss under Rule 12(b)(6). *See Tucker v. Middleburg-Legacy Place, LLC*, 539 F.3d 545, 549 (6th Cir. 2008). The Court construes the Gammarinos' Complaint in the light most favorable to them, accepts the allegations contained therein as true, and draws all reasonable inferences in their favor. *See Bullington*, 905 F.3d at 469. The Court should grant the motion only if the Court finds that there is no genuine issue of material fact and Defendants are entitled to judgment as a matter of law. *Bickley v. Dish Network, LLC*, 751 F.3d 724, 733 (6th Cir. 2014). When the moving party is a defendant, like here, a plaintiff need only provide the same "short and plain statement of the claim showing that the pleader is entitled to relief" that would survive a motion to dismiss under Rule 12(b)(6). *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012) (quoting Fed. R. Civ. P. 8(a)(2)).

But that short, plain statement must offer more than mere "labels and conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[A] formulaic recitation of the elements of a cause of action will not do." *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). There must be "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570).

This means a complaint must contain "either direct or inferential allegations respecting all material elements to sustain recovery under some viable legal theory." *Bishop v. Lucent Techs., Inc.*, 520 F.3d 516, 519 (6th Cir. 2008). "Conclusory allegations or legal conclusions masquerading as factual allegations will not suffice."

5

*Id.* (citing *Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005)). In sum, an action will be dismissed under this standard where "there is no law to support the claims made." *Stew Farm, Ltd. v. Nat. Res. Conservation Serv.*, 967 F. Supp. 2d 1164, 1169 (S.D. Ohio 2013), *aff'd*, 767 F.3d 554 (6th Cir. 2014) (citing *Rauch v. Day & Night Mfg. Corp.*, 576 F.2d 697, 702 (6th Cir. 1978)). The same holds where "the facts alleged are insufficient to state a claim." *Id.*

## LAW AND ANALYSIS

The Gammarinos pursue eight claims against Sycamore Township, its trustees, and its agents. (Doc. 2, #49–57). Four proceed under federal law; four proceed under state law. (*See id.*). None meet the plausibility threshold. Accordingly, the Court **GRANTS** Defendants' Motion for Judgment on the Pleadings. (Doc. 5). That said, the Court will permit the Gammarinos to amend and refile to supplement their allegations and hone their claims (if they can).

A.  **Plaintiffs' Federal-Law Claims Are Not Plausibly Alleged.**

The Gammarinos present four federal claims—42 U.S.C. § 1981, 42 U.S.C. § 1983, 42 U.S.C. § 1985, and 42 U.S.C. § 1986. Each fails to clear the plausibility threshold.

Start with § 1981. The Gammarinos allege that Defendants failed to properly hire, supervise, train, and investigate the actions of its agents. (Doc. 2, #51–52). And the Gammarinos claim that Defendants "knew or should have known" its agents violated the law in taking their property. (*Id.* at #52–53).

6

These allegations are entirely deficient—indeed borderline frivolous. Section 1981, on its face, extends to "[a]ll persons" certain equal rights as are "enjoyed by white citizens." 42 U.S.C. § 1981. Following this text, a § 1981 plaintiff must *always* demonstrate, in part, that he or she is "subject to discrimination based on their race" and that the defendant "intended to discriminate against him [or her] on the basis of race." *Amini v. Oberlin College*, 440 F.3d 350, 358 (6th Cir. 2006). Here, nothing in the Complaint alleges, plausibly or not, that any of the Gammarinos suffered discrimination based on their race. Indeed, from the Complaint, the Court does not even know any plaintiff's race.

Perhaps realizing this, the Gammarinos' Response avers that one plaintiff, Al Gammarino, is an Italian immigrant and naturalized American citizen. (Doc. 10, #212). Two problems with that. First, that fact appears nowhere in the Complaint. Second, the Gammarinos never insinuate, let alone plausibly allege, that the events at issue occurred *because* of Al Gammarino's race.

The Gammarinos' § 1985 and § 1986 claims fare no better. Allegations under § 1985(3)[2] "require 'some racial, or perhaps otherwise *class-based*, invidiously discriminatory animus.'" *Post v. Trinity Health-Michigan*, 44 F.4th 572, 580 (6th Cir. 2022) (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971)). And "[w]here plaintiff

---

[2] Technically, 42 U.S.C. § 1985 contains three sections: (1) "Preventing officer from performing duties," (2) "Obstructing justice; intimidating party, witness, or juror," and (3) "Depriving persons of rights or privileges." Although the Gammarinos don't say, the Court assumes they intend to proceed under 42 U.S.C. § 1985(3). If not, the Gammarinos should so clarify in their Amended Complaint.

7

has stated no cause of action under § 1985, no cause of action exists under § 1986." *Braley v. City of Pontiac*, 906 F.2d 220, 227 (6th Cir. 1990).

For the same reasons the Gammarinos' § 1981 claim fails, so too do their § 1985(3) and § 1986 claims. Their Complaint alleges no racial or other class-based animus. And even if Al Gammarino hails from Italy, the Gammarinos (again) provide zero allegations that his heritage in any way prompted Defendants' actions.

That leaves the Gammarinos' § 1983 claim, which also comes up short. Their § 1983 claim contains two paragraphs with one operative allegation:

> Defendants … at all times [sic] acted under color of statute, ordinance, resolution, regulation, custom or usage of the State of Ohio and the laws, resolutions, and ordinances of Sycamore Township to subject the Plaintiffs to the deprivation of rights, privileges or immunities secured by the Constitution, the State of Ohio Constitution, and law and caused injury to the Plaintiff, including but not limited to the injuries previously set forth herein.

(Doc. 2, #53). Of course, "a claimed violation of a state constitutional right is not cognizable under § 1983." *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 314 (6th Cir. 2005). Likewise, "a mere violation of … state law will not establish a proper claim under § 1983." *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995) (quoting *Conley v. Williams*, No. 93-5524, 1994 WL 326001, at *2 (6th Cir. July 5, 1994)). Rather, the Gammarinos must plausibly allege a *federal* law violation to state a § 1983 claim. *Id.* Thus, their references to the "State of Ohio Constitution" and "law," assuming that means Ohio law, are irrelevant.

To be sure, the Gammarinos also point to "the Constitution." And "law" presumably could include federal statutes. But their Complaint nowhere identifies *which* of their "rights, privileges, or immunities secured by the Constitution and

8

laws," *see* 42 U.S.C. § 1983, Sycamore Township, its trustees, or its agents allegedly violated. Instead, their § 1983 claim contains nothing more than a bare recitation of the statute's elements. That's not enough. "Conclusory allegations or legal conclusions masquerading as factual allegations will not suffice." *Bishop*, 520 F.3d at 519 (citing *Mezibov*, 411 F.3d at 716). And while they purport to incorporate the 80 prior paragraphs (Doc. 2, #53), the Gammarinos offer no hint which facts actually matter to their § 1983 claim. The Court declines to guess.[3]

The Gammarinos' Response asserts that the basis for their § 1983 claim "is not only set forth clearly in the complaint, but also in the Constitution of the United States which dates to September 17, 1787 when the U.S. Constitution was signed." (Doc. 10, #213–14). That doesn't help for two reasons. First, this argument still fails to say precisely how Defendants allegedly violated the Gammarinos' rights. Second, and more importantly, the Court does not understand the Gammarinos' intended purpose in invoking "September 17, 1787," the date "the U.S. Constitution was signed." (*Id.*). The Court is unaware of any provision in the original 1787 Constitution that the Gammarinos could say (plausibly or not) Sycamore Township violated. Indeed, elsewhere in their Response, the Gammarinos point to the Fourth, Fifth, or Fourteenth Amendments. (Doc. 10, #222). But the States ratified those amendments years after (or in the case of the Fourteenth Amendment, nearly a century after) 1787. And the Fourth and Fifth Amendments did not apply to the States (and thus

---

[3] Further, to proceed with their § 1983 claims, the Gammarinos must overcome qualified immunity and/or demonstrate they are bringing a proper *Monell* claim against Sycamore Township. Absent more clarity, the Court cannot evaluate the claims under these frameworks.

Sycamore Township and its officials) until the Fourteenth Amendment's ratification in 1868. So, the 1787 version of the Constitution doesn't offer much help.

That said, the Gamarinos' Response also argues that the Township violated their rights under the "Fourth, Fifth and Fourteenth Amendments to the United States Constitution" based on the "township's taking of plaintiffs' property without due process of law" and the unreasonable search of their property. (Doc. 10, #215, 222). And perhaps they could state a plausible claim under one or more of those amendments. After all, they allege that the Township took their property without notice. But they needed to identify the basis for their claim in their Complaint, and they failed to do so.

Perhaps recognizing that, the Gammarinos separately request "the opportunity to amend their [C]omplaint if the Court believes there is a lack of specificity." (Doc. 10, #223). And the Court finds it likely the Gammarinos did mean to allege in their Complaint—if inartfully—a Fourth Amendment unreasonable search claim, a Fifth Amendment takings claim, and a Fourteenth Amendment due process claim.[4]

Accordingly, the Court grants the Gammarinos thirty days to seek leave to amend their Complaint as to their federal claims. The Court notes, though, that the Gammarinos must allege actual facts that give rise to a plausible inference supporting any federal claim that they intend to pursue. The Court will not hesitate

---

[4] The Court at this time takes no position whether any such claims would have merit, or whether the Gammarinos could even plausibly allege them on the facts here, at least if one credits the exhibits attached to the Answer.

to deny leave to amend any claim where the Gammarinos do not clear the plausibility hurdle.

**B.     Plaintiffs Fail To Plausibly Allege Their State-Law Claims.**

The Gammarinos also pursue four state-law claims—a trespass claim, two conversion claims, and a claim under Ohio Revised Code § 2307.60 to recover damages for "theft." (Doc. 2, #49–51, 54–57). In addition to the Township itself, the Gammarinos sued the Township's trustees and agents in both their official and individual capacities. The Court takes the official and individual capacity claims separately.

Begin with the former. Although the Gammarinos name each Defendant in their official capacity, this is collectively a claim against Sycamore Township—a political subdivision under Ohio law. *See Lambert v. Clancy*, 927 N.E.2d 585, 586 (Ohio 2010). As a result, the Court considers Ohio Revised Code § 2774.02 political subdivision immunity. *Id.*

To determine if political subdivision is immune from liability, Ohio courts apply a "three-tiered analysis." *Wallace v. City of Rossford*, No. WD-17-061, 2018 WL 3203145, at *4 (Ohio Ct. App. June 29, 2018) (quoting *Rosenbrook v. Bd. of Lucas Cnty. Comm'rs*, 33 N.E.3d 562, 587 (Ohio Ct. App. 2015)). First, a court examines Ohio Revised Code § 2744.02(A) to determine whether the "general grant of immunity" applies. *Id.* If so, the court examines "whether immunity has been abrogated by the exceptions set forth in R.C. 2744.02(B)." *Id.* And only if an exception applies, "the third tier involves a determination of whether the political subdivision

11

is able to successfully assert one of the defenses listed in R.C. 2744.03, thereby reinstating its immunity." *Id.*

Under § 2774.02(A), political subdivisions have immunity when acting "in connection with a governmental or proprietary function." Ohio Rev. Code § 2774.02(A). Here, no party disputes Sycamore Township purported to exercise its police power when seeking to abate a nuisance, a governmental function. (*See* Doc. 2, #41; Doc. 5, #182).

Next, § 2744.02(B) affords a political subdivision immunity for intentional torts unless liability is "expressly imposed … by a section of the Revised Code." *See* Ohio Rev. Code § 2744.04(B)(1)–(5); *Bonkoski v. Lorain County*, 115 N.E.3d 859, 863–64 (Ohio Ct. App. 2018). Here, nothing has stripped the Township's immunity. Each state-law claim—trespass, conversion, and "theft"—is either an intentional tort or otherwise requires intent as an element. Indeed, Ohio courts have specifically held that trespass and conversion (which is arguably civil recovery for "theft") claims cannot proceed against Ohio political subdivisions. *See Bonkoski*, 115 N.E.3d at 863–64; *DSS Srvs., LLC v. Eitel's Towing, LLC*, No. 18AP-567, 2019 WL 3573586, at *7 (Ohio Ct. App. Aug. 6, 2019). And the Gammarinos have not identified a provision of the Ohio Revised Code waiving political subdivision immunity for their claims.

Accordingly, Sycamore Township remains immune under § 2744.04(A). And as a result, each Defendant is immune in their official capacity, as official-capacity claims are merely another name for claims against the Township.

That leaves the individual-capacity claims. Here too, immunity plays a role. Ohio Revised Code § 2744.03 grants government employees acting within the scope of their official responsibilities qualified immunity with limited exceptions. Relevant here: "The employees' acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner." Ohio Rev. Code § 2744.03(A)(6). The Gammarinos, presumably seeking to invoke that exception, allege throughout their Complaint that Sycamore Township's trustees and agents acted recklessly, maliciously, wantonly and/or intentionally in removing and disposing of the Gammarinos' property. (Doc. 2, #44–45, 47, 49–50). And for support, the Gammarinos claim Defendant Clark complained to a neighbor that the Gammarinos were "causing trouble for Sycamore Township." (*Id.* at #49).

Much of the Gammarinos' bad-faith narrative, though, strikes the Court as legal conclusions rather than factual allegations. For example, claiming Defendants "acted maliciously, wantonly, and/or recklessly" is, without more, entirely conclusory. (*Id.*). The Court cannot credit such allegations. *See Iqbal*, 556 U.S. at 678. And even in their Response, the Gammarinos still fail to identify credible factual support that Sycamore Township's trustees or agents harbored animus.[5]

To be sure, the Gammarinos suggest an unnamed neighbor heard one Defendant complain about the Gammarinos causing "trouble." (Doc. 2, #49). But

---

[5] Elsewhere, the Gammarinos claim "[t]he evidence will demonstrate there was glee on the part of the Defendants to take the Plaintiffs property and disposed of it without a hearing." (Doc. 10, #215). Here again, though, the Gammarinos point to no factual allegations in the Complaint to substantiate their view that Sycamore Township's trustees or agents acted in bad faith.

13

that's hardly evidence of malicious purpose, bad faith, or recklessness. If anything, the Gammarinos' causing "trouble" (if true) may help explain the actions Sycamore Township took—assuming the "trouble" consisted of maintaining their property in a manner that created a nuisance.[6] So even assuming Defendant Clark did say this, the Gammarinos' Complaint fails to plausibly allege that any Defendant should not receive qualified immunity.[7]

Again, though, the Gammarinos request the opportunity to amend and supplement their allegations. (Doc. 10, #223). And as the Court is providing the Gammarinos an opportunity to seek leave to amend their federal-law claims, the Court also will permit the Gammarinos thirty days to seek leave to amend their state-law claims. In doing so, however, the Court once more stresses the need to provide actual factual allegations rather than conclusory assertions, addressing the shortcomings identified above.

## CONCLUSION

For the reasons discussed, the Court **GRANTS** Defendants' Motion for Judgment on the Pleadings (Doc. 5) and **DISMISSES** the Gammarinos' Complaint

---

[6] Again, at this stage, the Court takes no position whether Sycamore Township's agents properly entered the Gammarinos' property or properly removed their vehicles and building materials.

[7] Defendants separately claim they are entitled to absolute legislative immunity. (Doc. 5, #186). At least for now, the Court disagrees. Legislative immunity covers a legislator's acts to "establish general policy." *Curry v. Blanchester*, Nos. CA2009-08-010, CA2009-08-012, 2010 WL 2807948, at *5 (Ohio Ct. App. July 19, 2010). "If, however, the action singles out specific individuals and affects them differently from others, it is administrative." *Id.* Based on the Gammarinos' allegations, it appears the Township trustees made a specific determination directed solely at the Gammarinos' various properties. If the case ever reaches discovery, though, the Township may reallege this defense if the facts show otherwise.

14

(Doc. 1) but does so **WITHOUT PREJUDICE**. The Court further **GRANTS** the Gammarinos thirty days to seek leave to file an Amended Complaint addressing the deficiencies set forth above and attaching that proposed Amended Complaint. During that time, this Court retains jurisdiction over this action. In light of the exhibits Defendants attached to their Answer, the Court also reminds the Gammarinos' counsel of his obligations to this Court when investigating, drafting, signing, and filing any Amended Complaint. *See* Fed. R. Civ. P. 11(b).

      **SO ORDERED.**

February 7, 2023
**DATE**

**DOUGLAS R. COLE**
**UNITED STATES DISTRICT JUDGE**