# Jacob v. Killian

United States Court of Appeals for the Sixth Circuit

September 12, 2011, Filed

File Name: 11a0666n.06

No. 10-1834

**Reporter**

437 Fed. Appx. 460 *; 2011 FED App. 0666N (6th Cir.)

WILLIAM JACOB, Plaintiff-Appellee, v. MICHAEL KILLIAN, Defendant-Appellant.

**Notice:** NOT RECOMMENDED FOR FULL-TEXT PUBLICATION. SIXTH CIRCUIT RULE 28 LIMITS CITATION TO SPECIFIC SITUATIONS. PLEASE SEE RULE 28 BEFORE CITING IN A PROCEEDING IN A COURT IN THE SIXTH CIRCUIT. IF CITED, A COPY MUST BE SERVED ON OTHER PARTIES AND THE COURT. THIS NOTICE IS TO BE PROMINENTLY DISPLAYED IF THIS DECISION IS REPRODUCED.

**Prior History:** ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN.

Jacob v. Twp. of W. Bloomfield, 2010 U.S. Dist. LEXIS 54373 ( E.D. Mich., June 1, 2010)

**Counsel:** For WILLIAM JACOB, Plaintiff - Appellee: Elizabeth A. Downey, Law Offices, Farmington Hills, MI.

For MICHAEL C. KILLIAN, in his individual and official capacities, Defendant - Appellant: Joseph Nimako, Cummings, McClorey, Davis & Acho, Livonia, MI.

**Judges:** Before: BOGGS, GILMAN, and COOK, Circuit Judges.

**Opinion by:** RONALD LEE GILMAN

## Opinion

 [*461]  **RONALD LEE GILMAN, Circuit Judge.** Michael Killian appeals from the district court's denial of his motion for summary judgment based on his claim of qualified immunity. This case arises out of various warrantless inspections that Killian conducted on or about William Jacob's residential property as a code-enforcement officer for the Township of West Bloomfield. The court denied Killian's motion for summary judgment because it determined that Jacob had raised genuine issues of material fact concerning whether Killian had violated Jacob's clearly established rights while conducting the warrantless inspections. Also pending before us is Jacob's motion to dismiss for a lack of jurisdiction over Killian's interlocutory appeal and his request for sanctions against Killian. For the reasons set forth below, we **DENY** Jacob's motion to dismiss and his request for sanctions, but **AFFIRM** the refusal of the district court to grant Killian qualified immunity as a matter of law.

### I. BACKGROUND

Jacob alleges that Killian and the Township of West Bloomfield violated his constitutional rights in the course of unfairly citing him for "blight" and "junk vehicles" in his yard. This is the third time that the district court has denied one of Killian's motions for summary judgment. The background facts are more fully set out in *Jacob v. Twp. of W. Bloomfield*, 192 F. App'x 330 (6th Cir. 2006), and *Jacob v. Twp. of W. Bloomfield*, 531 F.3d 385 (6th Cir. 2008).

Jacob originally brought suit for multiple constitutional violations arising out of the defendants' enforcement of Township ordinances against him. After various legal proceedings, the only remaining unresolved claim is based on Killian's alleged violation of Jacob's Fourth Amendment rights when Killian purportedly entered the curtilage of Jacob's property on numerous occasions without a warrant to determine whether Jacob was in compliance with the ordinances.

Killian originally inspected Jacob's property in 1999 based on an unsolicited complaint concerning the condition of the property. The officer discovered inoperable vehicles, "castoff material," and a general state of disarray. Killian issued a notice of violation after learning of 10 prior complaints regarding Jacob's property dating back to 1990. After subsequent investigations showed that Jacob remained in violation, the Township filed misdemeanor criminal charges against him in October 1999. Jacob pled guilty to the charge of blight, subject to the following plea agreement:

> Def. will clean up all blight (as directed by code enforcement officer Mike Killian) and remove fence supports within 14 days. Today — please issue a 30 day . . . committment [sic] order effective Oct 18, 1999. Officer Killian will inspect on Oct. [*462] 15, 1999. If [the Township attorney] reports all violations removed [after] the inspection of Officer Killian on Oct 15, 1999 — set aside the commitment order and — 2 yrs probation — no code violation.

Killian proceeded to inspect Jacob's property pursuant to the above agreement. After Killian notified the Township of Jacob's continuing violations, Jacob ended up serving the stipulated 30-day sentence in jail over portions of October and November 1999. As this court previously noted, "Killian continued to investigate and cite Jacob for blight conditions after Jacob completed his sentence. A lengthy dispute over the erection of a new fence [around Jacob's property] followed." *Jacob*, 192 F. App'x at 332 (record citation omitted).

In addition to his Fourth Amendment claim at issue in this appeal, Jacob originally brought claims for violations of his procedural- and substantive-due-process rights and his equal-protection rights, as well as several other Fourth Amendment claims based on actions other than the inspections presently at issue. The district court granted the defendants (Killian, the Township, and another code-enforcement officer whose actions are not relevant to this appeal) summary judgment on all of Jacob's claims except for his Fourth Amendment claim based on Killian's inspections and his procedural-due-process claim based on the 30-day jail sentence.

On appeal, this court partially reversed the judgment of the district court by granting Killian qualified immunity on Jacob's procedural-due-process claim. One of the reasons for this reversal was that Jacob's success on this claim would undermine the validity of his sentence, which would be contrary to *Heck v. Humphrey*, 512 U.S. 477, 114 S. Ct. 2364, 129 L. Ed. 2d 383 (1994). *Jacob*, 192 F. App'x at 337. This court also granted Killian qualified immunity under *Heck* concerning the 1999 inspection that led directly to Jacob's guilty plea. *Id.* at 334-35. Jacob's allegations of inspections in violation of the Fourth Amendment that took place after his incarceration, however, are not barred by *Heck. Id.* at 335.

But while Killian's original appeal was pending, this court decided *Widgren v. Maple Grove Twp.*, 429 F.3d 575 (6th Cir. 2005), which held that a "purely administrative" warrantless entrance by a tax assessor onto the curtilage of a house "does not violate the Fourth Amendment by observing the exterior of a house for a purely 'tax purpose.'" *Jacob*, 531 F.3d at 390 (quoting *Widgren*, 429 F.3d at 585). This caused us, in Killian's original appeal, to vacate the district court's judgment as to Killian's post-incarceration inspections and to remand the case for the district court to consider whether *Widgren* applied to the present circumstances. *Jacob*, 192 F. App'x at 335.

On this first remand, the district court denied Killian's renewed motion for summary judgment, which argued that *Widgren* entitled him to qualified immunity regarding his post-incarceration inspections. This court, in disposing of Killian's second appeal, affirmed the decision of the district court because Killian's post-incarceration inspections were more analogous to criminal investigations than to the administrative inspections that were at issue in *Widgren. Jacob*, 531 F.3d at 390-92. The case then resumed in the district court.

Killian thereupon filed his third motion for summary judgment, the motion that is at issue in this appeal. He alternatively argued that he is entitled to qualified immunity because (1) he did not enter Jacob's protected curtilage at all; (2) his intrusions, if they did occur, did not violate clearly established law; and (3) Jacob consented **[*463]** to the inspections as a condition of being on probation.

A central issue in this case is whether Killian did or did not enter the protected curtilage of Jacob's house. One of our prior opinions explained that

> [t]he property is partially enclosed by varying types of fencing. There is a significant gap in the fence on either side of the driveway, exposing Jacob's yard to passersby. The driveway entrance is on Willow Road, which Jacob describes as "a main highway." Jacob erected several "No Trespassing" and similar signs around his property.

*Jacob*, 192 F. App'x at 331 (record citations omitted). On Killian's first appeal, this court accepted the district court's determination that Jacob's "backyard is located immediately behind the home and that the majority of the backyard is enclosed by wire and wood fencing. . . . [T]herefore, . . . the backyard was part of the protected curtilage of Jacob's house." *Id.* at 334 (record citation and internal quotation marks omitted).

This ruling is now the law of the case. *Jacob*, 531 F.3d at 389. And because this court determined in 1997 that "the curtilage is considered part of the house itself for Fourth Amendment purposes," *id.* at 391 (quoting *United States v. Jenkins*, 124 F.3d 768, 772 (6th Cir. 1997)), "there is no question that the Fourth Amendment's protection of the intimate area surrounding [Jacob's] home was clearly established" when Killian's warrantless searches began in 1999, *id.* at 391-92.

Killian conceded for the purposes of his prior summary-judgment motions that he had in fact entered Jacob's backyard during the post-incarceration inspections. He instead challenged whether Jacob's backyard was protected curtilage and, if so, whether his intrusions violated clearly established law. Because the parties have now engaged in further discovery, the record currently contains more detailed facts regarding Killian's inspections. Killian thus brought the current motion for summary judgment in part to challenge the claim that he had actually entered the area that has already been determined to have the status of protected curtilage.

One of Killian's allegedly illegal searches occurred on January 7, 2000. Expert witnesses for both parties testified regarding where they think Killian was standing when he took photographs of Jacob's property on that date. Jacob's expert also determined that one photograph in the record was taken on a different date than the others. In addition, Jacob alleges that Killian conducted inspections of the property on other occasions, including on January 11, 2001, when Jacob claims that Killian entered the yard and took photographs at approximately 11 a.m. Jacob also claims, more generally, that he saw Killian "rummaging around" the yard on numerous occasions. Although Jacob claims that other persons have also observed Killian in the yard, he has not provided any testimony from such persons.

In rejecting Killian's argument that he was never in fact on Jacob's protected curtilage, the district court decided that it did not need to address the January 7, 2000 inspection because "even if the court were to find that Killian was outside the curtilage on January 7, 2000, questions of fact remain" regarding other incidents. Killian further argued that his inspections did not violate clearly established law because Jacob consented to such inspections in his plea agreement. The district court determined that Killian was "reaching" with this argument because Jacob "disputes that he was given probation at all." Furthermore, it reasoned that

> even if [Jacob] was given probation, there is no language in the agreement **[*464]** indicating that [Jacob] waived his Fourth Amendment rights. It is difficult to see how Killian could have reasonably believed that the vague language of the plea agreement served as a free and voluntary consent that entitled him to search [Jacob's] yard without a warrant at any time.

The court thus determined that Killian was not entitled to summary judgment on his qualified-immunity claim.

## II. JURISDICTION

We have jurisdiction pursuant to 28 U.S.C. § 1291 to hear an appeal from a "final decision[]" of the district court. Although the denial of summary judgment is generally considered a nonfinal order and is therefore not appealable to this court, the "denial of a motion for summary judgment on the ground of qualified immunity may be deemed a final, appealable order because the qualified immunity doctrine exists partly to protect officials from having to stand trial, and a defendant wrongly forced to go to trial loses the benefit of the immunity even if exonerated after trial." *Bishop v. Hackel*, 636 F.3d 757, 764 (6th Cir. 2011). But the "denial of a claim of qualified immunity is immediately appealable only if the appeal is premised not on a factual dispute, but rather on 'neat abstract issues of law.'" *Id.* (quoting *Johnson v. Jones*, 515 U.S. 304, 317, 115 S. Ct. 2151, 132 L. Ed. 2d 238 (1995)). Jacob argues that we lack jurisdiction to hear Killian's interlocutory appeal because Killian is contesting factual rather than legal determinations.

This court has held, however, that "where the trial court's determination that a fact is subject to reasonable dispute is blatantly and demonstrably false, a court of appeals may say so, even on interlocutory review." *Id.* at 769 (internal quotation marks omitted) (explaining that in *Scott v. Harris*, 550 U.S. 372, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007), the Supreme Court rejected, on interlocutory appeal, "both the plaintiff's version of the facts and the district court's determination that a genuine factual dispute existed" concerning the defendant's claim of qualified immunity). *Scott* permits interlocutory appeals where the plaintiff's version of the facts "is 'so utterly discredited by the record' as to be rendered a 'visible fiction.'" *Chappell v. City Of Cleveland*, 585 F.3d 901, 906 (6th Cir. 2009) (quoting *Scott*, 550 U.S. at 380-81). This court has characterized *Scott*'s allowance of interlocutory appeals as sanctioning challenges based on the legal issue of "whether the factual disputes (a) are *genuine* and (b) concern *material* facts" rather than "mere[] quibbling with the district court's reading of the factual record." *Id.* (emphasis in original) (internal quotation marks omitted); *but see* Jones v. Yancy, 420 Fed. Appx. 554, 2011 WL 1557384, at \*3 (6th Cir. 2011) (unpublished opinion) (holding that although "a determination that an issue of fact is 'genuine' is unreviewable," *Scott* allows "interlocutory appeals from denials of summary judgment in those rare cases where the district court makes a blatant and demonstrable error" (brackets and internal quotation marks omitted)).

In any event, where a defendant raises the purely legal question of whether the facts alleged support a claim that clearly established law was violated, we can ignore the defendant's factual contentions and resolve the legal issue without dismissing the entire appeal for a lack of jurisdiction. *Estate of Carter v. City of Detroit*, 408 F.3d 305, 310 (6th Cir. 2005). We thus have jurisdiction over Killian's interlocutory appeal to the extent that he challenges the district court's legal determinations, *id.*, as well as to decide whether this case is one of those rare situations "where the trial court's determination that a fact is **[\*465]** subject to reasonable dispute is blatantly and demonstrably false," *Bishop*, 636 F.3d at 769.

### III. ANALYSIS

"Under the doctrine of qualified immunity, government officials performing discretionary functions are shielded from civil liability unless their conduct violates clearly established constitutional rights." *Id.* at 765. A government official who moves for summary judgment on the basis of qualified immunity is entitled to the defense unless a reasonable juror viewing the facts in the light most favorable to the plaintiff might conclude that the official (1) violated a constitutional right (2) that was clearly established. *Pearson v. Callahan*, 555 U.S. 223, 232, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009). We review de novo the district court's denial of summary judgment based on qualified immunity. *Bishop*, 636 F.3d at 765.

#### A. Sufficiency of the facts regarding Killian's inspections other than on January 7, 2000

This court has already determined that Jacob's backyard qualifies as protected curtilage and that Killian's warrantless inspections of that area violated clearly established law. *Jacob*, 531 F.3d at 391-92. But Killian now challenges whether Jacob has raised a genuine issue of material fact concerning any post-incarceration visits other than Killian's January 7, 2000 inspection (which Killian challenges on different grounds). We have jurisdiction to

address this claim because Killian contends that the district court incorrectly ruled that Jacob raised a *genuine* issue of material fact as to when and how many times Killian entered Jacob's yard. *See Chappell*, 585 F.3d at 906 (holding that this court has jurisdiction to review the legal issues concerning "whether the factual disputes (a) are genuine and (b) concern material facts").

According to Killian, Jacob does not have sufficient evidence to support the claim that Killian entered the backyard on numerous occasions after Jacob's incarceration. But Killian does not challenge his specific location within Jacob's property during these incidents. Instead, he argues that there is insufficient evidence to create a genuine issue concerning whether there were any post-incarceration inspections other than the one on January 7, 2000.

Killian attempts to limit Jacob's claim to the four incidents that this court previously referenced based on Jacob's response to one of Killian's interrogatories. *See Jacob*, 192 F. App'x at 334 (noting that "[d]uring the course of discovery, Jacob disclosed that he intended to pursue his Fourth Amendment claim based on four separate incidents"). But the district court correctly noted that the "precise factual contours of Plaintiff's Fourth Amendment claim" were not previously at issue. This court in fact expressed no intent to prevent Jacob from pursuing his claim based on other incidents as well. *See id.* at 332 (noting that Jacob alleged "at least" four inspections of his property).

Killian also ignores the district court's determination that he "appears to confuse the alleged January 7, 2000 search with a search Plaintiff alleges to have occurred on January 11, 2001. Based upon [Jacob's] allegations, these are distinct incidents." On appeal, Killian argues that although Jacob claims that Killian took photographs of Jacob's yard on both January 7, 2000 and January 11, 2001, "[d]iscovery revealed that the only occasion Defendant took photographs was in January, 2000." But the fact that additional photographs were not uncovered during discovery does not mean that they were never taken because, as the district court explained, such **[*466]** photographs might simply be unavailable. The absence of any January 11, 2001 photographs in the record thus does not wholly negate Jacob's testimony that Killian took photographs on that date. Moreover, Jacob's expert determined that not all of the photographs in the record were taken on January 7, 2000. Killian also admitted that he inspected Jacob's property on June 26, 2001.

In addition, Jacob testified more generally that there were many occasions on which he walked out of his house and found Killian "rummaging around" or "rumbling and rambling" in the yard. Jacob even recalled the details of a specific conversation that he had with Killian on one such occasion. Jacob legitimately claims that he could not list the specific date of each incident because Killian intruded on his property so many times. *Cf. Harvill v. Westward Commc'ns, L.L.C.*, 433 F.3d 428, 436 (5th Cir. 2005) (holding that the plaintiff's sexual-harassment claim "that she was touched 'numerous times' instead of providing exact dates or the exact number of instances" did not prevent her allegations from raising a genuine issue of material fact).

The dates of Killian's alleged intrusions are particularly important in the present case because only his post-incarceration inspections are relevant. But the January 7, 2000, January 11, 2001, and June 26, 2001 incidents are sufficient to support Jacob's claim that a number of Killian's alleged inspections occurred after Jacob's incarceration.

Killian also argues that Jacob's claims are not substantiated by other witnesses. But Killian's admission that he inspected Jacob's property on June 26, 2001 corroborates Jacob's allegations of Killian's post-incarceration inspections. Moreover, Jacob's own testimony concerning Killian's intrusions is affirmative evidence that is sufficient, without more, to defeat a defendant's motion for summary judgment. *See Churchwell v. Bluegrass Marine, Inc.*, 444 F.3d 898, 904 (6th Cir. 2006) (reversing the district court's grant of summary judgment to the defendants because the plaintiff's own testimony was sufficient to create a genuine issue of material fact regarding the seaworthiness of the defendants' vessel). We therefore need not address the relevance of Jacob's unsubstantiated claims that third parties also saw Killian in the backyard.

According to Killian, however, he should still be granted qualified immunity because he inspected "Jacob['s] property when ordered to do so by the Court or prosecutor." This argument, even if factually correct, does not

entitle him to qualified immunity because, "since World War II, the 'just following orders' defense has not occupied a respected position in our jurisprudence." *Kennedy v. City of Cincinnati*, 595 F.3d 327, 337 (6th Cir. 2010) (quoting *O'Rourke v. Hayes*, 378 F.3d 1201, 1210 n.5 (11th Cir. 2004)). "Under the Supremacy Clause, public officials have an obligation to follow the Constitution even in the midst of a contrary directive from a superior or in a policy." *Kennedy*, 595 F.3d at 337 (brackets and internal quotation marks omitted). Moreover, Killian is not entitled to summary judgment on this claim because he has not pointed to any evidence substantiating that he conducted all of his post-incarceration inspections pursuant to an order from his superior within the Township.

Jacob has therefore raised a genuine issue of material fact as to whether Killian violated Jacob's Fourth Amendment rights by inspecting Jacob's property after his incarceration ended in November 1999. Upon our limited review of the factual record, Killian's challenge to the non-January 7, 2000 inspections falls well short **[*467]** of showing that the trial court's determination that facts related to these inspections are subject to reasonable dispute is "blatantly and demonstrably false." *See Bishop v. Hackel*, 636 F.3d 757, 769 (6th Cir. 2011).

### B. The district court's decision not to address the January 7, 2000 inspection

Killian further claims that he is entitled to qualified immunity because the photographs from his January 7, 2000 visit to the property establish that he was not on Jacob's protected curtilage during the inspection. Unlike Killian's argument that Jacob has not provided sufficient evidence to show that the other inspections ever occurred, Killian argues that although he took the January 7, 2000 photographs, he did not do so from Jacob's protected curtilage. The district court declined to address Killian's argument because, even if Killian is correct, the genuine issues of material fact that exist regarding the other incidents would still preclude a ruling in his favor.

"A court, in its discretion in shaping the case for trial, may deny summary judgment as to portions of the case that are ripe therefor, for the purpose of achieving a more orderly or expeditious handling of the entire litigation." *Powell v. Radkins*, 506 F.2d 763, 765 (5th Cir. 1975). The Comments to the recently revised Rule 56(g) of the Federal Rules of Civil Procedure also explain that where the court clearly "cannot grant all the relief requested by the motion, it may properly decide that the cost of determining whether some potential fact disputes may be eliminated by summary disposition is greater than the cost of resolving those disputes by other means, including trial."

Furthermore, the court may decline to decide a specific factual issue, "[e]ven if the court believes that a fact is not genuinely in dispute," because the court "may conclude that it is better to leave open for trial facts and issues that may be better illuminated by the trial of related facts that must be tried in any event." *Id.*; *see also* 10B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2737 (3d ed.1998) (noting that if "entering a partial summary judgment by identifying the facts that no longer may be disputed would not materially expedite the adjudication, [the court] may decline to do so"). The district court therefore properly declined to address Killian's claim of qualified immunity regarding the January 7, 2000 inspection.

### C. Effect of Jacob's alleged probation on Killian's qualified-immunity claim

Killian also challenges the district court's rejection of his argument that even if he entered Jacob's protected curtilage, these follow-up inspections did not violate Jacob's Fourth Amendment rights because Jacob consented to them in his plea agreement as a term of his probation. A party "may waive his Fourth Amendment rights by consenting to a search," but this consent "has effect only if it is given freely and voluntarily." *United States v. Carter*, 378 F.3d 584, 587 (6th Cir. 2004) (citing *Bumper v. North Carolina*, 391 U.S. 543, 548, 88 S. Ct. 1788, 20 L. Ed. 2d 797 (1968)).

#### *1. Jacob's alleged waiver of his Fourth Amendment rights*

The district court determined that Killian "is reaching here" because Jacob "disputes that he was given probation at all." Interpreting the facts in the light most favorable to Jacob, the court explained that Jacob's plea agreement provided that he would receive probation only if his subsequent compliance with the ordinances [*468] were to exempt him from serving time in jail. Because Jacob failed to comply and therefore ended up serving 30 days in jail, his probation arguably never took effect.

But Killian points to the Township's records showing that Jacob in fact received probation. In the entry regarding Jacob's plea agreement, these records state that Jacob agreed to two years of probation. The records also show, however, that the case was closed after Jacob served his 30 days in jail, without any mention of probation. And Killian has not demonstrated why the vague shorthand notations in the Township's administrative records should have more force than the actual language of the plea agreement. These ambiguous records thus do not negate the district court's interpretation of the plea agreement. Moreover, Jacob claims that the reference to probation was added to his plea agreement after he signed it, and that he did not knowingly or voluntarily agree to be on probation.

The district court decided that even if Jacob was given probation, "there is no language in the agreement indicating that [he] waived his Fourth Amendment rights." "Whether consent was free and voluntary so as to waive the warrant requirement of the Fourth Amendment is 'a question of fact to be determined from the totality of all the circumstances.'" *Carter*, 378 F.3d at 587 (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 227, 93 S. Ct. 2041, 36 L. Ed. 2d 854 (1973)); *see also United States v. Carr*, 187 F. App'x 602, 607 (6th Cir. 2006) (affirming the suppression of evidence that came from a warrantless search "[b]ecause the issue of consent is a factual determination that we review with a high degree of deference"). Jacob's plea agreement does not tie his possible probation to any sort of consent to continuing inspections of his property following his incarceration.

### *2. Lower expectation of privacy associated with probation*

Killian responds by arguing in his reply brief that, in addition to consenting to the inspections, Jacob's probationary status "demonstrated a diminished expectation of privacy" that allowed for Killian's warrantless searches. But because a genuine issue of material fact exists as to whether Jacob was on probation at all, Killian is not entitled to qualified immunity based on this argument even if Jacob's alleged probation would have allowed Killian's inspections.

### **D. Jacob's request of attorney fees or sanctions**

Finally, we turn to Jacob's request for attorney fees or sanctions against Killian for bringing this allegedly frivolous appeal in an effort to prolong the litigation. Jacob's request is governed by Rule 38 of the Federal Rules of Appellate Procedure, which provides that if the court "determines that an appeal is frivolous, it may, after a separately filed motion or notice from the court and reasonable opportunity to respond, award just damages and single or double costs to the appellee." *See also Dubay v. Wells*, 506 F.3d 422, 432 (6th Cir. 2007) ("The awarding of costs and attorney fees under Federal Rule of Appellate Procedure 38 is a matter entrusted to our discretion."). But "[t]he Advisory Committee Notes make clear that a statement inserted into an appellee's brief requesting sanctions," such as Jacob's request here, "does not constitute sufficient notice, but rather the appellee must file a separate motion for sanctions." *Bagsby v. Gehres*, 225 F. App'x 337, 354 (6th Cir. 2007).

[*469] Even without a separate motion from the requesting party, however, this court may still give sua sponte "notice and afford the appellant the opportunity to respond if it determines [that] the appeal is frivolous." *Id.* Although this is Killian's third appeal of the district court's denial of one of his motions for summary judgment based on a claim of qualified immunity, his first appeal was partially successfull (concerning his procedural-due-process claim and his preincarceration inspection) and his second appeal resulted from this court's remand for the district court to determine if *Widgren* applied to the present case. Killian's current appeal also raises some legitimate, albeit unmeritorious, issues based on facts that have been further developed since his prior motion. We therefore decline

to exercise our discretion to proceed on the issue sua sponte. *See Dubay*, 506 F.3d at 433 ("While we find Dubay's challenge to the Michigan Paternity Act to lack support in our equal protection jurisprudence, we do not consider his appeal of the district court's decision to be frivolous or worthy of imposing sanctions.").

But we are also cognizant of the fact that this is Killian's third interlocutory appeal from the denial of a motion for summary judgment in which he has sought qualified immunity. We further note that this case has been pending since 2003. The ability of defendants to bring interlocutory appeals from denials of qualified immunity raises the concern that they might bring such motions solely in order to delay the proceedings against them. *See Behrens v. Pelletier*, 516 U.S. 299, 310, 116 S. Ct. 834, 133 L. Ed. 2d 773 (1996) (holding that "if and when abuse does occur, . . . it is well within the supervisory powers of the courts of appeals to establish summary procedures and calendars to weed out frivolous claims" (brackets and internal quotation marks omitted)).

With our decision here, the law of the case now covers Killian's attempts to obtain qualified immunity based on both legal and fact-based arguments. The district court should therefore feel free to summarily dispose of any similar motions in the future if the court determines that Killian is bringing the motion for the dilatory purpose of delaying trial. *See English v. Dyke*, 23 F.3d 1086, 1090 (6th Cir. 1994) (explaining that the district court has the discretion to hold that the defendant has waived a qualified-immunity defense where the "defendant has failed to exercise due diligence or has asserted the defense for dilatory purposes").

### IV. CONCLUSION

For all of the reasons set forth above, we **DENY** Jacob's motion to dismiss and his request for sanctions, but **AFFIRM** the refusal of the district court to grant Killian qualified immunity as a matter of law.

**End of Document**