## UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

**AL GAMMARINO, TRUSTEE, *et al.*,**

      **Plaintiffs,**

            **Case No. 1:22-cv-200**

      **v.**           **JUDGE DOUGLAS R. COLE**

**SYCAMORE TOWNSHIP, *et al.*,**

      **Defendants.**

### <u>OPINION AND ORDER</u>

This is Plaintiffs' second crack at pleading a viable cause of action in this suit. The Court granted Defendants judgment on the pleadings the first time around but dismissed the claims without prejudice because it concluded Plaintiffs might be able to fix the shortcomings the Court had identified in the Complaint. (Doc. 12). So the Court granted Plaintiffs thirty days to move for leave to file an amended complaint—requiring Plaintiffs to attach the proposed complaint to the motion—if they concluded they could do so. Plaintiffs took the Court up on that offer. (Mot., Doc. 13). Defendants now oppose the motion for leave to file, contending that the new complaint still fails to clear the plausibility hurdle. (Opp'n., Doc. 14). For the reasons stated below, the Court agrees with Defendants. Thus, the Court **DENIES** Plaintiffs' Motion for Leave to File an Amended Complaint (Doc. 13). And, because Plaintiffs' second attempt has failed, the Court **DISMISSES** this case **WITH PREJUDICE**.

## BACKGROUND[1]

Plaintiffs Al, Cathy, and Anthony Gammarino (the Gammarinos) own three properties in Sycamore Township, Ohio (the Township). (Doc. 13-1, #264, 267, 270). They stored vehicles and building materials at each. (*Id.* at #255, 263). Defendant Township's agents (Agents) and trustees (Trustees) investigated all three properties and formally declared them nuisances. (*Id.* at #264, 267, 270). The Gammarinos allege that the Trustees and Agents did not follow state law or notify them of any violations before issuing those declarations. (*Id.* at #260–64). They also allege that because they did not receive notice, they never received the hearing that they allege in their Amended Complaint was required before the nuisance declarations could be enforced. (*Id.* at #263).

Some time after the Trustees declared the Gammarinos' properties nuisances, the Agents entered the properties without Plaintiffs' permission and removed the allegedly offensive vehicles and building materials. (*Id.* at #259, 263, 280–81). The Gammarinos allege this violates state and federal law. (*Id.* at #259–60). And they claim that the Trustees and Agents carried out these illegal acts maliciously, in bad faith, wantonly, and/or recklessly. (*Id.* at #264, 281).

---

[1] Because Defendants oppose Plaintiffs' motion for leave to file an amended complaint on futility grounds, the question the Court confronts is whether the proposed Amended Complaint could survive a Rule 12(b)(6) motion to dismiss. *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420–21 (6th Cir. 2000). To determine whether that standard is met, the Court accepts Plaintiffs' well-pleaded factual allegations as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). Accordingly, the Court relies on the allegations in the Amended Complaint in describing the background, but with the caveat that they are only allegations.

On March 17, 2022, the Gammarinos[2] sued Defendant Township in state court. (Doc. 2). They also named various Trustees and Agents as defendants in both their official and individual capacities: Tom James, Jim LaBarbara, Tom Weidman, Skylor Miller, Kevin Clark, Robert C. Porter, Ray Warrick, and John Doe Towing Companies and their John Doe operators. (*Id.* at #35–39). That Complaint asserted federal law claims arising under four statutes: 42 U.S.C §§ 1981, 1983, 1985, and 1986. (*Id.* at #51–54). It also included four Ohio law claims: one count of common law trespass, two counts of conversion, and one count arising under Ohio Revised Code § 2307.60 for "theft." (*Id.* at #49–51, 54–57).

Defendants removed the case to this Court under 28 U.S.C. § 1441 contending that the Court had original jurisdiction over the case under 28 U.S.C. § 1331. (Doc. 1). They then answered, (Doc. 3), attaching over two dozen exhibits. Some were letters Defendants apparently sent by regular and certified mail to the Gammarinos informing them that their properties were a nuisance and that the Township intended to abate the nuisance. (*E.g.*, Docs. 3-6, 3-16, 3-22). Others appear to be pictures of notice letters that the Township physically posted on the Gammarinos' properties. (*E.g.*, Docs. 3-9, 3-11, 3-14).

Defendants then moved for judgment on the pleadings. (Doc. 5). The Court granted the motion and dismissed the Gammarinos' Complaint. (Doc. 12, #1). But because it was a first dismissal, the Court dismissed the Complaint without prejudice

---

[2] Al Gammarino and Anthony Gammarino sue in both their individual capacities and as trustees. Because the distinction between the two capacities is irrelevant to the Court's analysis, the Court does not address the differences further.

and granted the Gammarinos thirty days to move for leave to file an Amended Complaint addressing the deficiencies in their Complaint, if they could, with the requirement that they attach the proposed Amended Complaint to their motion. (*Id*.).

Plaintiffs timely moved for leave to file that Amended Complaint. (Doc. 13). While not the model of clarity, the proposed Amended Complaint once again asserts various state and federal claims—some sounding either directly or indirectly in the state or federal constitution, and others sounding in state statutory or common law. It names each Defendant in both their individual and official capacities and makes clear that anytime a claim is raised against a given defendant, it is asserted against that party in both his individual and official capacities. (Doc. 13-1, #253–55, 279–93).

Starting with the claims that sound indirectly in the U.S. Constitution, the Amended Complaint asserts a claim against all Defendants under 42 U.S.C § 1983 based on alleged Fourth, Fifth, and Fourteenth Amendment violations. (*Id*. at #283–84). Separately, it raises a claim, again against all Defendants, labeled "Violation of Due Process," which apparently alleges a direct cause of action under Article 1, Section 16 of the Ohio Constitution and the Fifth and Fourteenth Amendments of the United States Constitution. (*Id*. at #285). And finally, it asserts a claim against all Defendants for "Selective Enforcement," apparently under Fourteenth Amendment to the United States Constitution[3] (without referring to 42 U.S.C. § 1983). (*Id*. at #290–92).

---

[3] In connection with the "Selective Enforcement" count, in addition to the Fourteenth Amendment, the Amended Complaint also refers to the Fourth and Fifth Amendments, as well as Article 1, Section 16 of the Ohio Constitution. (Doc. 13-1, #290–91). The count does not appear to assert, however, that Defendants are liable under those provisions, but rather

Beyond the claims based in the state or federal constitutions, the proposed Amended Complaint also raises six Ohio law claims, one (common law trespass) against the Township and Defendants Clark, Miller, and the John Does, and the other five (conversion, a count seeking declaratory relief, negligence, replevin, and one count arising under Ohio Revised Code § 2307.60 for "theft") against all Defendants. (*Id.* at #279–83, #285–90, #293–94).

Defendants responded with six arguments about why the Court should not allow the Gammarinos to move forward with the Amended Complaint. (Doc. 14). First, Defendants contend that, to the extent that the proposed Amended Complaint is asserting official-capacity claims against the individual defendants, those claims are duplicative of the direct § 1983 claim against the Township. (*Id.* at #364). Second, they argue that the individual defendants sued in their individual capacities are entitled to qualified immunity on the constitutional claims, both because there was no underlying constitutional violation and because the Gammarinos have not identified any "clearly established" constitutional right that Defendants allegedly violated. (*Id.* at #364–69). Third, and relatedly, they argue that the constitutional claims must be dismissed because the allegations do not show that there was an underlying constitutional violation or that the Township was the "moving force" behind any constitutional violation. (*Id.* at #369–70). Fourth, they argue that all Defendants are entitled to immunity on the state-law claims, including statutory,

---

that the violations of those provisions are evidence supporting a Fourteenth Amendment selective prosecution claim. Thus, as described below, that is how the Court treats the claim in that count.

legislative, and political subdivision immunity. (*Id.* at #370–75). Fifth, they argue that the declaratory judgment claim must be dismissed because Defendants are immune with respect to the underlying claims. (*Id.* at #375–76). Finally, they argue that there is no basis for treble or punitive damages and that Plaintiffs cannot recover attorneys' fees. (*Id.* at #376–77).

Plaintiffs replied, twice. Specifically, they filed both a Reply (Doc. 16) and an Amended Reply (Doc. 17) on the same day.[4] They begin by arguing that Defendants' entry onto their property constituted a warrantless search under the Fourth Amendment and that the Trustees failed to carry out the requirements set out in the nuisance resolutions. (Doc. 17, #415–16). Second, they argue that Defendants are not entitled to qualified or state law immunity (*id.* at #416–19) and provided no notice of the alleged violations (*id.* at #419–20). Third, as to the selective enforcement (*id.* at #421–22) and other alleged constitutional violations (*id.* at #420–21, 422–24), they say that the Amended Complaint sufficiently alleges facts stating claims to relief, and they argue that Defendants do not merit statutory immunity because their actions were malicious. (*Id.* at #424–28). Fourth, they withdraw their request for declaratory judgment. (*Id.* at #428). Fifth, they argue that they can recover treble and punitive damages (except against the Township) because Defendants acted maliciously. (*Id.* at #428–29). And finally, to support their theory that Defendants acted with malice,

---

[4] A side-by-side comparison reveals only very minor edits between the two versions. For example, there are some word corrections on quoted materials, and an error in the section numbering is addressed. Because the two versions are identical in terms of the substantive arguments, the Court will refer only to the Amended Reply.

Plaintiffs cite (1) Jason Adkins' affidavit regarding statements Clark allegedly made to him,[5] and (2) the allegation in the Complaint that "Miller [] laugh[ed] as the Plaintiffs' personal property and building materials were removed." (Doc. 13-1, #284 (citing Doc. 13-15, #336); Doc. 17, #429 (citing Doc. 13-1, #281)).

These matters are now ripe for the Court's review.

## STANDARD OF REVIEW

"When a motion to dismiss is granted[,] ... the usual practice is to grant plaintiffs leave to amend the complaint." *PR Diamonds, Inc. v. Chandler*, 364 F.3d 671, 698 (6th Cir. 2004), *abrogated in part on other grounds by Frank v. Dana Corp.*, 646 F.3d 954, 961 (6th Cir. 2011). The Court offered the Plaintiffs an opportunity to seek such leave here. But when a plaintiff tenders a proposed amended complaint, the court will deny leave to file if, among other reasons, the amendment would be futile. *Id.*; *Dubuc v. Green Oak Twp.*, 312 F.3d 736, 752 (6th Cir. 2002).

The touchstone for assessing futility is whether the proposed amendment can survive a Rule 12(b)(6) motion to dismiss. *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420–21 (6th Cir. 2000). To survive such a motion, a plaintiff need provide only a "short and plain statement of the claim showing that the pleader is entitled to

---

[5] Adkins' cousin lives across the street from one of the real properties at issue. (Doc. 13-5, #336). Plaintiffs' proposed Amended Complaint purportedly quotes from Adkins' affidavit and suggests Adkins averred that Clark told Adkins that Gammarino was "giving the (Sycamore) Township trouble." (Doc. 13-1, #284). But the affidavit, which is attached to the Motion as Exhibit N, does not contain that exact quote. Adkins instead says there that "Kevin Clark told the affiant that Al Gammarino was giving Sycamore Township problems." (Doc. 13-15, #336). He also affied that "[a]ffiant was advised by Kevin Clark that Al Gammarino was a bad landowner." (*Id.*). Adkins' affidavit had not been attached to the initial Complaint, which is where Plaintiffs first cited Clark's alleged statements to argue that Defendants acted maliciously. (Doc. 2, #50).

7

relief." *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012) (quoting Fed. R. Civ. P. 8(a)(2)). But that short, plain statement demands more than mere "labels and conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rather, it requires "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

To meet this pleading standard, a complaint must contain "either direct or inferential allegations respecting all material elements to sustain recovery under a viable legal theory." *Terry v. Tyson Farms, Inc.*, 604 F.3d 272, 275–76 (6th Cir. 2010) (citation omitted). "[C]onclusory allegations or legal conclusions masquerading as factual allegations will not suffice." *Id.* at 276 (cleaned up). In short, an action will be dismissed where "there is no law to support the claims made" or "the facts alleged are insufficient to state a claim." *Stew Farm, Ltd. v. Nat. Res. Conservation Serv.*, 967 F. Supp. 2d 1164, 1169 (S.D. Ohio 2013).

## LAW AND ANALYSIS

Through their proposed Amended Complaint (as modified by their withdrawal of the claim for declaratory relief in their Amended Reply), Plaintiffs pursue eight claims against Defendants. Two are argued as direct claims under both the Ohio and United States Constitutions, another one arises under federal law (§ 1983), and the remaining five proceed under state law (both statutory and common law). For the reasons discussed below, none meet the plausibility threshold. Accordingly, the Court denies Plaintiffs' Motion for Leave to File an Amended Complaint (Doc. 13).

A.   **The Gammarinos' Direct Claims Under The U.S. And Ohio Constitutions Fail As A Matter Of Law.**

Start with an easy one (or, more accurately, two). In Counts V ("Violation of Due Process") and VIII ("Selective Enforcement"), the Gammarinos seek to assert direct claims for money damages against state actors under the United States and Ohio Constitutions. That doesn't work.

Begin with the latter. "[T]he Ohio Constitution itself does not provide for a civil damage remedy." *Provens v. Stark Cnty. Bd. of Mental Retardation & Developmental Disabilities*, 594 N.E.2d 959, 966 (Ohio 1992). *Accord Harris v. Columbus*, 2016-Ohio-1036, ¶ 24 (10th Dist.) ("Insofar as Harris alleges a violation of the Ohio Constitution, there is no private right of action for damages based on a violation of the Ohio Constitution."). "Moreover, unlike the federal system where 42 U.S.C. § 1983 creates a private cause of action to remedy violations of the United States Constitution, there exists no statute in Ohio analogous to Section 1983." *Autumn Care Ctr., Inc. v. Todd*, 22 N.E.3d 1105, 1110 (Ohio Ct. App. 2014) (citation omitted). In short, the Gammarinos cannot pursue money damages against Defendants predicated on alleged violations of the Ohio Constitution.

Nor do the Gammarinos fare any better in seeking to sue for money damages under the United States Constitution. True, the Supreme Court has held that in certain circumstances the U.S. Constitution gives rise to an implied right of action for money damages. *Egbert v. Boule*, 596 U.S. 482, 490–91 (2022). But such actions apply only to *federal* agents. *Smith v. Kentucky*, 36 F.4th 671, 674–75 (6th Cir. 2022). When it comes to state actors, § 1983 creates the exclusive cause of action for a party

9

who has been deprived of a right created by federal law, including federal constitutional law, by an official acting under the color of state law. *Foster v. Michigan*, 573 F. App'x 377, 391 (6th Cir. 2014). So that is the vehicle to which the Gammarinos must turn to pursue their claims predicated on the U.S. Constitution. *Smith*, 36 F.4th at 675–76. But the Gammarinos separately pleaded a § 1983 cause of action (covering much the same ground) in Count IV. So, any references to rights secured under the U.S. Constitution in Counts V and VIII can be understood only as an attempt to plead a direct claim for money damages under the U.S. Constitution itself. No such claim exists.

Accordingly, whether Counts V and VIII sound in the Ohio Constitution, the U.S. Constitution, or both, they fail as a matter of law. So the Court denies leave to file those claims and dismisses them with prejudice.[6]

## B.    Gammarinos' § 1983 Claim

Next, the Court turns to Plaintiffs' § 1983 claim (Count IV). "Section 1983 is not self-executing, but merely provides a method for vindicating federal rights elsewhere conferred." *Johnson v. Ward*, 43 F. App'x 779, 781 (6th Cir. 2002) (cleaned up). Therefore, the Gammarinos must plausibly allege a *federal* law violation to state a § 1983 claim. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995). They suggest three constitutional provisions that Defendants allegedly violated in the Amended Complaint: the Fourth (unlawful entry and seizure), the Fifth and Fourteenth

---

[6] That said, the Court will consider the U.S. Constitutional provisions that the Gammarinos cited in Counts V and VIII, along with the other factual allegations in those counts, in deciding whether the Gammarinos stated a viable § 1983 claim in Count IV.

Amendments (due process), and the Fourteenth Amendment (selective prosecution).[7]
None work.

Start with the due process claims. As noted, Plaintiffs seek to press two, one based on the Fifth Amendment[8] and one based on the Fourteenth Amendment. But it really amounts to one claim, as the standard for both is the same. *Dusenbery v. United States*, 534 U.S. 161, 167–68 (2002) (applying *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306 (1950), which is a Fourteenth Amendment case, to a Fifth Amendment due process claim based on lack of notice). In support of their due process

---

[7] Technically, because these are state actors, the Fourth and Fifth Amendment claims are really Fourteenth Amendment claims, in that the Fourteenth Amendment incorporates the Fourth and Fifth Amendments and applies them against the States. *See, e.g., Mapp v. Ohio*, 367 U.S. 643, 650–51 (1961) (recognizing that the Fourth Amendment's protection against unreasonable searches and seizures was incorporated against the states in *Wolf v. Colorado*, 338 U.S. 25 (1949)). For clarity, though, the Court will refer to the Fourth and Fifth Amendment arguments in those terms.

[8] The Fifth Amendment includes a variety of guarantees beyond its due process component, such as, for example, the Double Jeopardy Clause. Perhaps most relevant here, the Fifth Amendment includes the Takings Clause, which requires the government to provide "just compensation" when taking property "for public use." U.S. Const. amend. V. While the Court suggested in its previous Opinion and Order that the Gammarinos may want to raise a takings claim in the Amended Complaint if they had facts to support it, (*see* Doc. 12, # 244), the Court does not understand the Gammarinos to have done so. True, in one paragraph of their proposed Amended Complaint, they do allege that the Defendants "t[ook] property of the Plaintiffs' [sic] without recompense." (Doc. 13-1, #286). But they include that allegation in a claim labeled "Negligence," and it is offered in support of an argument that "Defendants failed in their duty to act with care." (*Id.* at #285–86). So the Court does not read that allegation as raising a constitutional claim. Beyond that, Plaintiffs also refer to Defendants' "confiscat[ing]" their property, but that could be understood as asserting either a due process claim (if the "confiscat[ion]" occurred without notice) or a takings claim (if the "confiscat[ion]" occurred for public use without just compensation). (*Id.* at #267, 270, 273, 275, 277, 279). But everything about the proposed Amended Complaint implies that the Gammarinos' concern was the alleged lack of notice—in other words, that their claim sounds solely in due process, not in the Takings Clause. (*E.g.*, *id.* at #278–79 (alleging "[t]hat the Defendants failed to provide the Plaintiff Gammarino with notice required by R.C. 505.87, Fifth Amendment to the U.S. Constitution, Fourteenth Amendment to the U.S. Constitution, and Article 1, Section 16 of the Ohio Constitution, including but not limited to the due process clause as to the actions of the Defendants at [one of the properties]").

11

claim, the Gammarinos allege, in both the proposed Amended Complaint and the Reply, that they received no notice and, as a result, had no opportunity to be heard. (Doc. 13-1, #263; Doc. 17, #419–20). To their credit, that is not a bad starting point— the Gammarinos are correct that the due process clause requires notice and an opportunity to be heard before the government acts against a person or his property. *Mullane*, 339 U.S. at 314. But the problem is that they have not plausibly alleged a lack of notice.

Remember, the Gammarinos are alleging *constitutional* violations, so they must plausibly allege *constitutionally deficient* notice. And when it comes to notice, all the U.S. Constitution requires is notice that is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and [to] afford them an opportunity to present their objections." *Id.*

So how does that standard play out here? To start, Defendants attached over two dozen exhibits to their Answer, as discussed above, which on their face provided notice to the Gammarinos of the Township's intent as to the three properties at issue. (Docs. 3-1 to 3-26). Defendants also averred in their Answer that they sent all the letters in those exhibits via both certified and regular mail. (Doc. 3, #61–65).[9] Now,

---

[9] At this stage of the litigation, the Court may consider "document[s] [] referred to in the pleadings and [] integral to the claims." *Com. Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 335–36 (6th Cir. 2007). Here, as noted, Defendants attached the documents at issue to their Answer to the original Complaint. But Plaintiffs' proposed Amended Complaint explicitly discussed many of these exhibits and attempted to discredit them. (*E.g,* Doc. 13-1, #259–63). And the alleged failure to provide Plaintiffs with notice is central to Plaintiffs' claims that they were denied their constitutional rights. Perhaps more fundamentally, Plaintiffs do not dispute that Defendants sent the letters or posted the notices—they argue only that those letters and notices were constitutionally deficient to provide notice. So the

in opposing leave to file the Amended Complaint, Defendants again point to those same documents, along with the exhibits that the Gammarinos attached to the proposed Amended Complaint. (Doc. 14, #363, 367 (referring to Docs. 3-1 to 3-26 and Docs. 13-2–13-17)). According to Defendants, these materials provide clear evidence that they "followed the prescribed statutory requirements, obtained declarations of nuisance violations, and provided numerous notices of those violations to Plaintiffs before the abatement of the nuisance occurred." (*Id.* at #367). But Defendants do not need to prove all of that. Whether or not they followed 'prescribed statutory requirements,' as they claim, these efforts at least seem "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane*, 339 U.S. at 314. That is all due process requires. And as a result, the Gammarinos have not plausibly alleged a due process violation.

The Gammarinos argue otherwise. They contend that those letters and postings are inadequate, mainly because Defendants allegedly did not send the notices to the Gammarinos' home addresses or provide certified mail receipts. (Doc. 13-1, #260–63; Doc. 17, #419–20). They may be correct that Defendants did not do so. But there appears to be no dispute that Defendants sent the notices to, or posted them at, the properties themselves: 3684 E Galbraith Road, 3700 E Galbraith Road, and 8308 St. Clair Avenue. (Docs. 3-1 to 3-3, 3-5, 3-6, 3-8, 3-9, 3-11, 3-12, 3-14–3-16, 3-19,

---

Court concludes that it may consider Defendants' exhibits. *South Side Quarry, LLC v. Louisville & Jefferson Cnty. Metro. Sewer Dist.*, 28 F.4th 684, 694 n.3 (6th Cir. 2022).

3-21, 3-22, 3-24, 3-25). That is enough to comply with the constitutional notice requirements. *Keene Grp., Inc. v. City of Cincinnati*, 998 F.3d 306, 313 (6th Cir. 2021) ("The Supreme Court [has] recognized that 'posting notice on real property is a singularly appropriate and effective way of ensuring that a person is actually apprised of proceedings against him.'" (quoting *Jones v. Flowers*, 547 U.S. 220, 236 (2006))); *First Floor Living LLC v. City of Cleveland*, 83 F.4th 445, 455–56 (6th Cir. 2023) (same).

Moreover, not only is it clear from the pleadings that Defendants posted such notices, but Al Gammarino admits in a letter attached to the proposed Amended Complaint that he *saw* a violation notice posted at 8308 St. Clair Avenue before the Township acted to abate the alleged nuisances. (Doc. 13-5, #307). So he has conceded that he received actual notice of at least one of the alleged nuisance violations and the Township's plans for abatement, at least as to that property. And although he has not included a copy of the notice he saw along with his letter, based on the dates he mentions, he most likely saw Exhibit Y to Defendants' Answer. (Doc. 3-25, #167). That notice included a copy of the nuisance resolution and explained how to contact Kevin Clark, the Township's Planning and Zoning Inspector, with any questions about the resolution. (*Id.* (referencing Doc. 3-23)). So Al Gammarino's concession directly contradicts any claim that he never received notice as to 8308 St. Clair Avenue specifically. And more broadly it undermines Plaintiffs' claim that they never received notice about *any* of the alleged violations at *any* of the three properties at issue. Of course, the Court need not (and cannot) resolve that factual issue here. As

14

noted above, it ultimately matters not whether the Gammarinos actually received the letters—Defendants afforded Plaintiffs all the notice that due process requires when they gave constructive notice by posting the notices at, and mailing them to, the properties at issue. *Keene Grp.*, 998 F.3d at 313.

Beyond that, to the extent that the Gammarinos are arguing that the form of the notice or the mode of its delivery did not comply with *state* rules, that argument is inapposite. A mere failure to conform with such notice rules does not necessarily render the notice constitutionally deficient. *Cf. United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 272 (2010) ("[A]ctual notice … more than satisfied [Petitioner's] due process rights" even though Respondent "deprived [Petitioner] of a right granted by a procedural rule." (emphasis omitted)). Under the Constitution, the *only* question, as noted above, is whether the notice was "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane*, 339 U.S. at 314. Claims of statutory deficiencies in notice do little to answer that question.

The bottom line is that "[i]f an individual did not receive *procedurally* adequate notice but was notified *in fact* that the government intended to deprive the individual of property or a liberty interest, no claim under procedural due process will lie." *Krueger v. City of Eastpointe*, 452 F. Supp. 3d 679, 690 (E.D. Mich. 2020). One of Plaintiffs' own exhibits concedes actual notice and they have otherwise failed to allege that the notice provided was constitutionally inadequate, as discussed above. Nor have they pleaded any facts suggesting that, had they acted on that notice, they would

15

have been denied the opportunity to be heard. Indeed, according to an affidavit that the Gammarinos attached to their proposed Amendment Complaint, Defendants intended to have a hearing on October 19, 2021, to discuss removing vehicles from the properties. (Doc. 13-15, #336). Therefore, Plaintiffs have not plausibly alleged any due process violations under the Fifth or Fourteenth Amendments.

Move to the selective prosecution claim under the Fourteenth Amendment. "In order to make out an equal protection claim on the basis of selective enforcement, a plaintiff must demonstrate that someone similarly situated but for the illegitimate classification used by the government actor was treated differently." *Lofties v. Elizabeth Grabel SP567*, 826 F. App'x 539, 542 (6th Cir. 2020) (citation omitted). To meet that standard, a plaintiff must show "that a government actor had a bad reason for enforcing the law against him and not against a similarly situated party, or that the action had no rational basis." *Id.* (cleaned up). And he must demonstrate that lack of a rational basis by "clear evidence." *Id.* (citation omitted). In short, he must "disprove the rationality of every conceivable justification for his less favorable treatment." *Id.* (citation omitted).

Plaintiffs allege that Defendants chose not to proceed against a host of other property owners whose properties supposedly had similar nuisance violations. (Doc. 13-1, #290–92). But they have not provided enough detail for the Court to evaluate the plausibility of such claims to determine if their neighbors' alleged offenses are truly similar in all material respects. Merely alleging that there are nuisances at the other properties does not constitute well-pleaded allegations of material similarity

16

between the Gammarinos' properties and their neighbors' properties. *Cf. Twombly*, 550 U.S. at 556–57 ("Without more, parallel conduct does not suggest conspiracy … Hence, when allegations of parallel conduct are set out … to make a[n] [antitrust] claim, they must be placed in a context [suggesting an agreement], not merely parallel conduct that could [equally] … be independent action."). So the Gammarinos have not plausibly alleged that the Township had no rational basis for allegedly treating those properties differently, and they have not cleared the plausibility hurdle for a selective enforcement claim.[10] Accordingly, the Gammarinos have not advanced any viable Fourteenth Amendment claim.

That leaves Plaintiffs' Fourth Amendment claim. It similarly falls short. "A warrant is unnecessary when a municipality seizes property that has been declared a nuisance by means [that satisfy] … procedural due process standards." *Keene Grp*, 998 F.3d at 315 (cleaned up); *accord Widgren v. Maple Grove Twp.*, 429 F.3d 575, 580–81 (6th Cir. 2005) (finding that entering land to post a civil infraction notice did not violate the Fourth Amendment). The Trustees issued nuisance declarations before seizing the property. And as discussed above, Plaintiffs have failed to allege

---

[10] It is perhaps possible that the Gammarinos meant to press a vindictive prosecution claim, rather than a selective prosecution claim. There are two problems with that, however. First, that is not what the Complaint says. Second, they have failed to make out the necessary elements of a vindictive prosecution claim anyway. For example, they have not shown the four factors needed to show a "realistic likelihood of vindictiveness." *United States v. Dupree*, 323 F.3d 480, 489 (6th Cir. 2003) ("To establish vindictive prosecution, [a plaintiff] must show: (1) exercise of a protected right; (2) the prosecutor's 'stake' in the exercise of that right; (3) the unreasonableness of the prosecutor's conduct; and, presumably, (4) that the prosecution was initiated with the intent to punish the plaintiff for the exercise of the protected right." (cleaned up)). In short, there is precious little in the proposed Amended Complaint that plausibly suggests that the resolution was passed, or any other conduct occurred, "with the intent to punish the plaintiff for the exercise of the protected right." *Id.* (citation omitted).

plausible due process violations. So Plaintiffs have not plausibly alleged that Defendants violated the Fourth Amendment by entering their properties without a warrant.

Plaintiffs resist this conclusion by pointing to two cases (Doc. 17, #418) and warnings they posted telling Defendants to stay off their property (Doc. 13-1, #291). Neither case is on point. In *Jacob v. Killian*, the *Widgren* rule cited above that no Fourth Amendment violation is wrought when an official enters a property to conduct administrative inspections did not apply "because Killian's post-incarceration inspections were more analogous to criminal investigations than to the administrative inspections that were at issue in *Widgren.*" 437 F. App'x 460, 462 (6th Cir. 2011). In contrast, this case involves civil nuisance violations, so *Widgren* applies. The other case, *O'Farrell v. Harlem Township Board of Trustees*, is similarly inapplicable. 2019-Ohio-1675 (5th Dist.). There, the evidence showed that the zoning inspector misled the appellant about steps he could take to prevent nuisance abatement, which would permit a jury to infer the local officials' abatement of an alleged nuisance was done with malice. *Id.* ¶¶ 53–54. The Gammarinos make no allegation that Defendants misled them, let alone any other competent evidence of malice, bad faith, or ill motive as detailed above. So *O'Farrell* does not change the Court's conclusion. Finally, Plaintiffs' warnings to stay off their land do not by themselves compel the conclusion that posting notices violated Plaintiffs' Fourth Amendment rights. *Widgren*, 429 F.3d at 580 (finding that "No Trespassing" signs

18

were not sufficient to create "an area where an expectation of privacy is necessarily reasonable" such that the Fourth Amendment's protections apply).

In sum, Plaintiffs have not plausibly alleged any Fourth, Fifth, or Fourteenth Amendment violations, so their § 1983 claim fails. And because the Court concludes that Plaintiffs have not plausibly alleged any underlying constitutional violation, the Court need not, and thus does not, consider the other aspect of Defendants' qualified immunity arguments—that the rights at issue were not "clearly established."

## C.    Plaintiffs Have Not Plausibly Alleged Their State-Law Claims.

That leaves the state-law claims. After the Amended Reply withdrew Plaintiffs' count seeking declaratory relief, the proposed Amended Complaint asserts five Ohio law claims: one count of trespass (Count I), one count of conversion (Count II), one count of negligence (Count VI), one count of replevin (Count VII), and one count arising under Ohio Revised Code § 2307.60 (Count IX) for "theft." (*Id.* at #279–82, #285–90, #293–94). As to each, the Gammarinos sued the relevant Trustees and Agents in both their official and individual capacities.

### 1.    The Official-Capacity Claims

As it did in its previous Opinion and Order, the Court begins with the official-capacity claims. Although the Gammarinos name each Defendant in their official capacity, this is collectively a claim against Sycamore Township—a political subdivision under Ohio law. *Lambert v. Clancy*, 927 N.E.2d 585, 591 (Ohio 2010). As a result, as to the state law claims, the Court must consider the applicability of Ohio Revised Code § 2744.02, which governs political subdivision immunity. *Id.*

19

The Court applies a "three-tiered analysis" to determine whether Defendants, in their official capacities, are entitled to political subdivision immunity. *Wallace v. City of Rossford*, 2018-Ohio-2598, ¶ 27 (6th Dist.) (quoting *Rosenbrook v. Bd. of Lucas Cnty. Comm'rs*, 33 N.E.3d 562, 567 (Ohio Ct. App. 2015)). Those three tiers are: (1) "whether the general grant of immunity provided by [Ohio Rev. Code §] 2744.02(A) applies," (2) "whether immunity has been abrogated by the exceptions set forth in [Ohio Rev. Code §] 2744.02(B)," and (3) "[i]f an exception applies, … whether the political subdivision is able to successfully assert one of the defenses listed in [Ohio Rev. Code §] 2744.03, thereby reinstating its immunity." *Id.*

The trespass, conversion, and "theft" claims come out the same way as they did in this Court's previous Opinion and Order—political subdivision immunity applies—and for the same reasons. (Doc. 12, #245–46). Plaintiffs try to avoid this result by adding a few new factual details. (Doc. 13-1, #257). But the key issue here is Defendants' conduct and the allegations about that conduct are substantially the same as in the original Complaint.

First, under § 2744.02(A), a political subdivision, like the Township, has immunity when acting "in connection with a governmental or proprietary function." Ohio Rev. Code § 2744.02(A)(1). Here, no party disputes Sycamore Township purported to exercise its police power when seeking to abate a nuisance, which is a quintessential governmental function. (Doc. 13-1, #273; Doc. 14, #360; Doc. 17, #412–13, 415–16). So the general grant of immunity applies.

Second, § 2744.02(B) affords a political subdivision immunity for any intentional torts committed by the subdivision's agents or employees unless liability for that conduct is "expressly imposed upon the political subdivision [itself] by a section of the Revised Code." Ohio Rev. Code § 2744.02(B)(1)–(5); *Bonkoski v. Lorain County*, 115 N.E.3d 859, 863–64 (Ohio Ct. App. 2018) ("Because the exceptions of [Ohio Rev. Code §] 2744.02(B)(1) through (B)(4) are limited to negligent conduct, the only exception that could apply to an intentional tort claim is … [Ohio Rev. Code §] 2744.02(B)(5)." (cleaned up)). Trespass, conversion, and "theft" all are either intentional torts or otherwise require intent as an element. So even if the individual Defendants may be liable in their individual capacities—an issue the Court addresses below—*the Township* (i.e., the real party in interest in the official-capacity claims) receives immunity under § 2744.02(B). *Id.* at 863–64; *DSS Servs., LLC v. Eitel's Towing, LLC*, 2019-Ohio-3158 , ¶¶ 32–33 (10th Dist.). And the Gammarinos still have not identified a provision of the Ohio Revised Code waiving political subdivision immunity for claims like those they advance here, so the Court need not consider the third tier of the immunity analysis. Accordingly, Sycamore Township remains immune under § 2744.02(A)—as do the individual Defendants to the extent they are sued in their official capacities—on the trespass, conversion, and "theft" claims.

That leaves the negligence and replevin claims. Take the negligence claim first. The portion seeking to impose liability on the Township because it failed to adhere to due process requirements is unpersuasive because the Gammarinos have not plausibly alleged due process violations, as discussed above. (Doc. 13-1, #285–86

21

("Defendants owed Plaintiffs a duty of care to adhere to due process requirements prior to forcibly removing Plaintiffs' personal property from their real property.")). The rest of the negligence claim also fails to overcome political subdivision immunity. As discussed in the previous paragraph, the general grant of immunity applies, and nuisance abatement is a governmental function. By their terms, none of the statutory exceptions specifically related to negligence apply here. Ohio Rev. Code § 2744.02(B)(1) (negligent use of a motor vehicle), (B)(2) (negligence when political subdivision acts in its proprietary capacity), (B)(3) (negligent maintenance of public roads), (B)(4) (negligence occurring on government property). And neither of the other statutory provisions the Gammarinos cite—Ohio Revised Code §§ 505.87, 505.871— expressly impose civil liability. (*E.g.*, Doc. 13-1, #285 (referring to the statutory requirements of Ohio Rev. Code §§ 505.87, 505.871)). So the exception for express statutory liability does not apply. Ohio Rev. Code § 2744.02(B)(5) ("In addition to the circumstances described in divisions (B)(1) to (4) of this section, a political subdivision is liable for injury, death, or loss to person or property when civil liability is expressly imposed upon the political subdivision by a section of the Revised Code[.]"). Therefore, the Township is also immune on the Gammarinos' negligence claim.

Finally, the Gammarinos' replevin action seeks monetary damages, rather than the return of property. (Doc. 13-1, #289, 294). Because Plaintiffs "do[] not seek the return of [their] property, … [t]his action is not truly an action for replevin, it is an action sounding in tort." *Davis v. Springfield Police Dep't*, 2004-Ohio-1164, ¶ 11

(2d Dist.). Accordingly, the tort immunity analysis above also applies to the replevin claim.

In short, Sycamore Township remains immune under § 2744.02(A). And each Defendant is immune in their official capacity because the official-capacity claims are merely claims prosecuted against the Township under a different label.

### 2. The Individual-Capacity Claims

The Court turns next to the individual-capacity claims. Here, too, the Court's analysis from its previous Opinion and Order applies. (Doc. 12, #247–48). Ohio Revised Code § 2744.03 grants government employees acting within the scope of their official responsibilities statutory immunity with some limited exceptions. *Shelton v. Twin Twp.*, 30 N.E.3d 1047, 1053 (Ohio Ct. App. 2015). Under the relevant exception, government officials are not entitled to immunity when "[t]he employees' acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner." Ohio Rev. Code § 2744.03(A)(6)(b). But the Gammarinos' allegations that Defendants acted maliciously, in bad faith, wantonly, and/or recklessly remain conclusory. The Court cannot credit such allegations. *Iqbal*, 556 U.S. at 678. So their individual-capacity claims are not plausibly alleged.

The Gammarinos seek to buttress their conclusory allegations of bad faith with (1) Jason Adkins' affidavit regarding statements Clark allegedly made to him, and (2) the allegation of "Miller['s] [] laughing and grinning … as Plaintiff Gammarino's personal property was removed" from one of the properties at issue in this suit. (Doc. 13-1, #281, 284; Doc. 17, #429). Even crediting both allegations as true, neither

plausibly alleges malice, bad faith, or recklessness. Consistent with the Township's clear position that Plaintiffs maintained their properties poorly and created nuisances, as shown by the notices they mailed and posted, Clark's considering the Gammarinos "bad landowner[s]" who were "giving Sycamore Township problems" does not give rise to a plausible inference of ill motive on Clark's part. (Doc. 13-15, #336). And it would likely explain the (non-malicious) genesis of the nuisance abatement action. And Miller's "laughing and grinning … as Plaintiff Gammarino's personal property was removed" is similarly inadequate to show malice. Even assuming this is true, Plaintiffs have not "plead[ed] factual content that [would] allow[] the court to draw the reasonable inference that" Miller's behavior reflected bad faith. *Iqbal*, 556 U.S. at 678. Namely, Plaintiffs' Complaint provides no background regarding Miller's actions to create the inference that he was expressing wry pleasure at Plaintiffs' misfortune, rather than laughing for any number of other possible reasons. *Twombly*, 550 U.S. at 556–57 (holding that a mere allegation of parallel economic conduct was insufficient to create a reasonable inference of an unlawful agreement in violation of the antitrust laws because it was equally conceivable that the parallel conduct occurred organically in the market absent an antitrust violation). So the Gammarinos have not plausibly alleged that any Defendant acted in bad faith and therefore should not receive statutory immunity. And, as a result, their individual-capacity claims fail.

**CONCLUSION**

For the reasons discussed above, the Court **DENIES** Plaintiffs' Motion for Leave to File an Amended Complaint (Doc. 13). And, because this is the Gammarinos' second failed attempt to raise viable claims in this cause of action, the Court **DISMISSES** this case **WITH PREJUDICE**. The Court **DIRECTS** the Clerk to enter judgment and to **TERMINATE** this case on its docket.

**SO ORDERED.**

January 22, 2024
**DATE**

**DOUGLAS R. COLE**
**UNITED STATES DISTRICT JUDGE**